# EXHIBIT C

Slip Copy
(Cite as: 2007 WL 2044656 (S.D.N.Y.))

Page 3

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

RITCHIE CAPITAL MANAGEMENT, L.L.C.,
Ritchie Risk-Linked Strategies Trading
(Ireland), Limited, Ritchie Risk-Linked
Strategies Trading (Ireland) II,
Limited, Walkers SPV Limited, as trustee for
Ritchie Risk-Linked Life
Strategies Trust I and Ritchie Life Strategies
Master Trust, and Ritchie Risk-
Linked Strategies Trading, Ltd., Plaintiffs,
v.
COVENTRY FIRST LLC, the Coventry Group,
Inc., Montgomery Capital, Inc., LST I
LLC, Alan Buerger, Constance Buerger, Reid S.
Buerger, Antonio Muniz, Alex
Seldin, Neal Jacobs, Eileen Shovlin, and Jim
Dodaro, Defendants.

No. 07 Civ. 3494(DLC).

July 17, 2007.

Lawrence S. Robbins, Gary A. Orseck, Daniel R. Walfish, Rachel S. Li Wai Suen, Robbins, Russell, Englert, Orseck & Untereiner LLP, Washington, DC, Thomas P. Puccio, Law Offices of Thomas P. Puccio, New York, NY, for Plaintiffs.

George A. Borden, of Counsel, Dane H. Butswinkas, Robert M. Cary, David A. Forkner, Williams & Connolly, LLP, Washington, D.C., for Defendants.

OPINION & ORDER

DENISE COTE, District Judge.

*1 The defendants have moved to dismiss this RICO complaint, filed on May 2, 2007. Their motion is granted, with a limited leave to amend. This is essentially a breach of contract claim governed by two complex agreements negotiated between sophisticated parties. The plaintiffs' effort to add other statutory and common law claims largely fails.

Background

The following is drawn from the complaint and the two contracts which underlie this lawsuit, each of which is integral to the complaint. The parties are engaged in the life settlements industry, a secondary market for life insurance policies. The industry operates as follows. Paying a sum of money that is more than the price an owner of a life insurance policy would receive if a policy were returned to the issuing insurance company, and yet less than the death benefit, a buyer acquires the policy and continues to pay premiums until the insured's death. The buyer then receives the death benefit, and if the costs of paying premiums have been less than the death benefit, makes a profit.

The plaintiffs allege that the four corporate defendants, which they refer to collectively as Coventry, are leading players in the life settlements industry, having purchased over 1,300 life insurance policies representing more than $3 billion in death benefits between 2001 and 2005. Beginning in 2005, plaintiff Ritchie Capital Management, L.L.C. ("Ritchie Capital") entered into negotiations with Coventry to purchase policies. At some point it contributed the majority of the financing that Coventry used to purchase policies, while Coventry exercised its expertise in analyzing which policies should be purchased and in servicing purchased policies. Ritchie Risk-Linked Strategies Trading (Ireland), Limited ("Ritchie I") and Ritchie Risk-Linked Strategies Trading (Ireland) II, Limited ("Ritchie II") sent money to Coventry to buy the policies that Coventry acquired, and the policies were then transferred "to plaintiffs." After purchasing the policies, Ritchie I and II sent money to pay the monthly premiums in the amounts that Coventry determined were owed, and Coventry arranged for those funds to be disbursed to the issuing life insurance companies.

The first agreement between the parties governing this arrangement is the September 8, 2005 agreement between Ritchie I and defendant LST 1 LLC ("LST") signed by defendant Alex Seldin ("Seldin"). A second agreement dated December 15, 2005, was executed between Richie II and LST, and signed again by Seldin. The two agreements contain the following three representations, among others, by the seller LST:

The consummation of the transactions contemplated by this Agreement and the fulfillment of the terms hereof will not violate any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Slip Copy                                                                                              Page   4
(Cite as: 2007 WL 2044656, *1 (S.D.N.Y.))

United States federal, state or local law or regulation ....
There is no action, suit or proceeding before or by any court, regulatory body, administrative agency or other governmental agency or body, domestic or foreign, now pending, or to the Seller's knowledge, threatened, against or affecting the Seller or its assets or properties: ... seeking any determination or ruling that might materially and adversely effect [sic] the performance by the Seller of its obligations under ... this Agreement.

    ....

*2 All Life Settlement Policies ... have been [ ] Originated by the Seller ... in one or more transactions that in all material respects were in accordance with and in compliance with all applicable United States federal, state and local laws, rules and regulations applicable to life settlement transactions and the purchase and resale of life insurance policies ....

Section 7.12 of each agreement contained the following integration clause:
... [T]his Agreement sets forth the entire understanding of the parties hereto relating to the subject matter hereof, and all prior understandings, written or oral, are superseded by this Agreement.... The Purchaser [Ritchie I or II] expressly acknowledges that the Seller [LST] has not made any representations and warranties other than as set forth herein and in the other Transaction Documents. The Purchaser represents and warrants to the Seller that, independently and without reliance upon the Seller (other than its reliance on the Seller's representations, warranties and covenants set forth in the Transaction Documents) and based upon such documents and information as it has deemed appropriate, it has made and will continue ... to make its own appraisal of and investigation into the business, operations, ... financial and other conditions ... of the Seller, and its own decision to enter into this Agreement and to take, or omit to take, action under any Transaction Document. Except for items specifically required to be delivered hereunder, the Seller shall not have any duty or responsibility to provide the Purchaser or any of its Affiliates any information that comes into the possession of the Seller or any of its officers, directors, employees ... or Affiliates.

Finally, the agreements had New York choice of law and forum selection clauses. They also waived the right to a jury trial for any action or cause of action "arising out of or in any way related to this agreement."

The complaint alleges that the defendants engaged in fraud by both defrauding the insureds, and concealing from the plaintiffs that dishonesty and an ongoing investigation of the fraud being conducted by the Attorney General of the State of New York ("Attorney General"). Coventry defrauded the insureds by bribing brokers, who assisted Coventry in acquiring the policies from insureds, not to act on bids for the policies placed by Coventry's competitors. Coventry also falsified documents to conceal from the insureds the amount paid in brokerage commissions. The plaintiffs learned of this scheme in October 2006, when the Attorney General sued Coventry. Coventry first revealed the existence of an investigation to the plaintiffs in June 2006. [FN1] In conversations in June 2006, Seldin implied that Coventry was not engaged in precisely the conduct which was the target of an Attorney General's subpoena.

> FN1. While the complaint alleges that Coventry disclosed the investigation in June 2007, it appears that the plaintiffs intended to allege that the disclosure was made to them in June 2006.

The plaintiffs allege that the defendants conspired with each other to defraud the insureds through acquiring policies in a rigged bidding process and to induce institutional investors like Ritchie Capital to acquire the policies. They list purported violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 & 1343. In addition to repeating allegations from the lawsuit filed by the Attorney General concerning the fraud on the insureds, the complaint contains two RICO predicate acts related to the deception of the plaintiffs. The first asserts that during the negotiations of the two agreements with Ritchie I and II, defendants Seldin, Reid Buerger, and Antonio Muniz ("Muniz") sent emails which contained the following misrepresentations: that the transactions the parties were about to enter would not violate federal or state law; that no proceeding before any government agency was then proceeding to "the Seller's knowledge" which would affect the performance of the Seller under the contemplated agreements; that the Seller had

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

Slip Copy
(Cite as: 2007 WL 2044656, *2 (S.D.N.Y.))

Page 5

perfected ownership in each policy; and that the purchases of the policies were in compliance with laws applicable to life settlement transactions and the purchase and resale of life insurance policies. The second relevant predicate act asserts that in June 2006, defendant Reid Buerger misrepresented to plaintiffs the nature of the Attorney General's investigation.

*3 Insofar as damages are concerned, the complaint asserts that the value of the policies purchased by Ritchie I and II has greatly diminished "since the New York Attorney General's action was commenced." It contends that the plaintiffs had anticipated profiting from the sale of the policies to others in a securitization transaction, and for that purpose had obtained a pre-sale report and rating from the Moody's service on a number of the policies. Moody's withdrew its rating because of the Attorney General's investigation. By interfering with the resale value of the policies, the defendants harmed not only Ritchie I and II, but the plaintiffs that own or are beneficially interested in Ritchie I and II. The complaint also asserts that Coventry owed fiduciary duties to these other plaintiffs.

The complaint contains seven causes of action. The first three are RICO claims pleaded against all of the defendants. A fraud claim and a fraudulent inducement claim are pleaded against the Coventry defendants, Alan and Reid Buerger, Muniz, and Seldin. Finally, breach of fiduciary duty and breach of contract claims are pleaded against the Coventry defendants. The plaintiffs seek, inter alia, $700 million, and demand a jury trial. The October 26, 2006 complaint filed by the Attorney General against Coventry First LLC, Montgomery Capital, Inc., the Coventry Group, Inc., and Reid Buerger is attached as an exhibit.

Discussion

The defendants seek dismissal of this lawsuit for failure to state a claim and for lack of personal jurisdiction over each of the individual defendants and two of the corporate defendants. They also move to strike the demand for a jury trial. As of now it may be that only two of the plaintiffs--Ritchie I and II--will succeed in stating a claim, and that claim is a breach of contract claim against the corporate defendants. It is therefore unnecessary at this time to reach the issue of personal jurisdiction over the individual defendants. Moreover, since Ritchie I and II have waived their right to a jury trial, it is unnecessary at this point to reach the jury demand issue. [FN2]

> FN2. The plaintiffs have not asked for leave to amend their complaint. Nonetheless, they will be granted leave to amend in those limited instances where it appears from the briefing that the plaintiffs may be able to cure identified defects in their pleading.

Under the pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure, complaints must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir.2006). Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005). When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.2007) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir.2006) (citation omitted). A court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, --- F.3d ----, 2007 WL 1717803, at *9 (2d Cir.2007) (citing Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1968-69 (2007)). Although the focus should be on the pleadings, a court may also consider any written instrument attached to the complaint as an exhibit, "or any statements or documents incorporated in it by reference." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir.2000) (citation omitted); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir.1991).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy
(Cite as: 2007 WL 2044656, *4 (S.D.N.Y.))

Page 6

*4 Under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The Rule requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir.2006). Under Rule 9(b) "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Nonetheless, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Lerner, 459 F.3d at 290 (citation omitted). The inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. at 290-91 (citation omitted).

I. Breach of Contract

The complaint brings a breach of contract claim against each of the four corporate defendants. LST signed the two agreements at issue, and it is alleged to be a wholly owned subsidiary of Coventry First LLC ("Coventry First"), and an alter ego, agent, and instrumentality of the Coventry corporate family. Montgomery Capital, Inc. ("Montgomery Capital") is the sole member of Coventry First. The Coventry Group, Inc. is the fourth corporate defendant, and is owned by Alan and Constance Buerger, who with others also own Montgomery Capital.

The complaint alleges that the following contractual commitments were breached by the four corporate defendants: that Coventry's acquisition of polices complied with all laws, and that no government body was seeking to prevent the transactions contemplated by the agreements or seeking a determination that might affect the performance of Coventry under the agreements; that Coventry would take all reasonable actions under applicable law to perfect its ownership of the policies before conveying them to Ritchie I or II; and that in acquiring the policies, Coventry had complied with law.

The defendants contend that only plaintiffs Ritchie I and II have standing to bring this claim; that only LST is properly named as a defendant since the complaint does not plead facts sufficient to pierce the corporate veil; and that the claim must be dismissed in its entirety since it does not allege the satisfaction of a condition precedent, that is, the agreements' 30-day notice provision. The plaintiffs concede that only Ritchie I and II may bring the breach of contract claim.

In New York, "[q]uestions relating to the internal affairs of corporations ... are generally decided in accordance with the law of the place of incorporation." [FN3] United States v. Funds Held in the Name or for the Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir.2000). LST is a Delaware limited liability company. Therefore, the law of Delaware on piercing the corporate veil should be applied.

> FN3. Federal choice of law rules would most likely also require application of the place of incorporation to a determination of whether to disregard the corporate form, "[s]ince choice of law rules seek to insure that a case will be resolved under the same rules of conduct whatever the forum, and that rights of foreign sovereigns will be respected." Presbyterian Church of Sudan v. Talisman Energy, Inc., 453 F.Supp.2d 633, 683 n. 10 (S.D.N.Y.2006) (citing Lauritzen v. Larsen, 345 U.S. 571, 578 (1953)).

*5 "Persuading a Delaware court to disregard the corporate entity is a difficult task." Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood, 752 A.2d 1175, 1183 (Del. Ch.1999) (citation omitted). "Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." Id. at 1184 (citation omitted). "To prevail on an alter ego theory of liability, a plaintiff must show that the two corporations operated as a single economic entity such that it would be inequitable ... to uphold a legal distinction between them." Fletcher v. Atex, Inc., 68 F.3d 1451, 1458 (2d Cir.1995) (citation omitted). The plaintiffs have sufficiently alleged pursuant to Rule 8 their theories of liability for the three corporate defendants who did not sign the agreements.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy
(Cite as: 2007 WL 2044656, *5 (S.D.N.Y.))

Page 7

The parties debate whether the agreements' notice provision, which waives the right to bring a claim if notice is not given of a breach within 30 days of knowledge of the breach, is a condition precedent or subsequent, whether it constitutes an affirmative defense, and whether a plaintiff has the obligation to plead satisfaction of the provision. The plaintiffs assert that they did comply with the notice provision and are prepared to prove that they did.

Rule 9(c) directs that "[i]n pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity." Fed.R.Civ.P. 9(c). Some courts have found that this requires at least "a general averment of performance of a condition precedent." See, e.g., Udell v. Berkshire Life Ins. Co. of Am., No. CV032721SJFKAM, 2005 WL 1243497, at *5 (E.D.N.Y. May 25, 2005). On the other hand, Rule 9(c) 'does not in terms require the plaintiff to allege the performance or occurrence of conditions precedent; it simply permits a plaintiff to do so generally and requires specificity in the denial of any such allegation." ICD Holdings S.A. v. Frankel, 976 F.Supp. 234, 243 (S.D.N.Y.1997). Since the plaintiffs will be given leave to amend in any event, plaintiffs will be permitted to file an amended breach of contract claim containing a general declaration that Ritchie I and II satisfied the notice requirement.

II. Breach of Fiduciary Duty

Each of the plaintiffs brings a breach of fiduciary duty claim against the four corporate defendants. The claim asserts that the four defendants were partners, joint venturers, and co-venturers of Ritchie Capital, which created a fiduciary duty to each of the plaintiffs. The defendants move to dismiss this claim based on the agreements' express disclaimer of the creation of such relationships. Under the heading "Tax Classification," the agreements provide that

*6 Nothing contained in this Agreement is intended to or shall be deemed or construed by the parties hereto or by any third person to create the relationship of principal and agent (including dependent agent) or of a partnership or joint venture. The parties hereto agree that they will not take any action contrary to the foregoing intention and agree to report the transaction for all tax purposes consistent with the foregoing intention unless and until determined to the contrary by an applicable tax authority.
(Emphasis supplied.)

Where parties to a contract deal in an "arms length" commercial transaction, a fiduciary relationship will not be found "absent extraordinary circumstances." Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield, 276 F.3d 123, 130 (2d Cir.2002) (citation omitted). [FN4] Thus, a conventional business relationship "without more" is not converted into a fiduciary relationship "by mere allegation." Oursler v. Women's Interart Ctr., 566 N.Y.S.2d 295, 297 (App.Div.1991); see also Northeast General Corp. v. Wellington Advertising, Inc., 624 N.E.2d 129, 132-33 (N.Y.1993). In fact, in this case, there was an express disclaimer of such a relationship.

> FN4. Given the agreements' choice of New York law and the parties' joint reliance on New York law in this briefing, New York law will be applied to all common law claims unless there is a specific reason to decline to do so.

The plaintiffs' effort to avoid the contractual denial of a partnership and joint venture fails. They assert that the provision only applies to tax consequences since it is contained in a section of the agreements entitled "Tax Classification." As another provision of the agreements provides, however, the contract headings are "for purposes of reference only and shall not otherwise affect the meaning or interpretation of any provision hereof."

The plaintiffs next assert that the contract bar only applies to the signatories Ritchie I and II and not to non-signatory plaintiffs. The remaining plaintiffs, however, have pleaded no adequate bases for establishment of a fiduciary relationship absent one between the defendants and Ritchie I and II.

III. Fraud

A fraud claim is brought by all plaintiffs against the four corporate defendants as well as Alan and Reid Buerger, Muniz, and Seldin. It asserts that these defendants made material misstatements or omissions regarding both the circumstances under which owners of life insurance policies were induced to part with their policies, and the existence



Slip Copy
(Cite as: 2007 WL 2044656, *6 (S.D.N.Y.))

Page 8

and target of the Attorney General's investigation. The defendants move to dismiss this claim on the ground that the complaint largely fails to identify misrepresentations made by particular defendants as required by Rule 9(b), and is in any event barred by the agreements' integration clause. Insofar as the fraud claim rests on omissions, the defendants argue that the complaint fails to plead a duty to disclose, particularly given the express bar in the agreements. Finally, to the extent the fraud claim rests on misrepresentations or omissions concerning representations and warranties contained in the agreements, then these duplicate the breach of contract claim and are barred for that reason.

*7 The defendants are correct that the complaint does not sufficiently identify speakers to survive scrutiny under Rule 9(b)'s standards. If this were the only defect, however, the plaintiffs could be given an opportunity to cure. The defects in this claim, however, extend further.

Under New York law, a fraud claim will not lie if it arises "out of the same facts as plaintiff's breach of contract claim." Telecom Intl. Am., Ltd. v. AT & T Corp., 280 F.3d 175, 196 (2d Cir.2001) (citation omitted). Even with the addition of the allegation that the "defendant never intended to perform" the contract, "the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." Id. In order to succeed on a fraud claim arising from a breach of contract, a plaintiff must show: (1) "a legal duty separate from the duty to perform under the contract"; (2) "a fraudulent misrepresentation collateral or extraneous to the contract"; or (3) "special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone v. Recovery Credit Servs., 98 F.3d 13, 20 (2d Cir.1996). The plaintiffs have not pointed to any separate legal duty to support the fraud claim or any special damages. Nor have they identified a representation collateral to the contract. The fraud claim appears to rest entirely on the subjects covered in the representations and warranties contained in the agreements. To the extent that there was a misrepresentation or omission in connection with those contractual representations and commitments, then that conduct must be pleaded as a breach of contract claim. The fraud claim is dismissed.

IV. Fraudulent Inducement

The plaintiffs bring a fraudulent inducement claim against the four corporate defendants as well as Alan and Reid Buerger, Muniz, and Seldin for their misleading statements and concealments regarding Coventry's practices in purchasing life insurance policies. The defendants make essentially the same arguments in connection with this claim as they did in moving to dismiss the fraud claim.

The fraudulent inducement claim fails to meet the pleading requirements under Rule 9(b). Beyond that deficiency, however, the claim is explicitly barred by the agreements, in which Ritchie I and II acknowledge that LST had not made representations other than as set forth in the agreements. Under New York law, "a general merger clause is ineffective ... to preclude parol evidence that a party was induced to enter the contract by means of fraud." Mfrs. Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir.1993). "When, however, the contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." Id. "[W]here a party specifically disclaims reliance upon a particular representation in a contract, that party cannot, in a subsequent action for common law fraud, claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon." Harsco Corp. v. Segui, 91 F.3d 337, 345 (2d Cir.1996) (citing Danann Realty Corp. v. Harris, 157 N.E.2d 597, 599 (N.Y.1959)).

*8 The integration clause in the agreements that governed this commercial transaction bars the fraud claim; the plaintiffs expressly disclaimed reliance on the very representations they now claim were fraudulent. In that clause, Ritchie I and II "expressly acknowledge[ ] that the Seller has not made any representation and warranties other than as set forth herein and in the other Transaction Documents." [FN5] The integration clause also specifically finds that "without reliance upon the Seller," the purchaser "has made and will continue ... to make its own appraisal of and investigation into the business, operations, ... financial and other conditions ... of the Seller." Furthermore, although it is true that even without a fiduciary duty, "during the course of negotiations surrounding a business transaction, a duty to disclose may arise ... where

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Slip Copy  
(Cite as: 2007 WL 2044656, *8 (S.D.N.Y.))

Page 9

one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge," Lerner, 459 F.3d at 292 (citation omitted), the clause specifically dispels any duty of the seller to "provide the Purchaser or any of its Affiliates any information." Since the acts which the plaintiffs allege the fraud induced were the entry into the two agreements that Ritchie I and II executed, the acknowledgment in the agreements is sufficient to bind not just the signatories but the other plaintiffs.

> FN5. Transaction Documents are defined to include the Master Policy Purchase Agreement, the Servicing Agreement, and other documents to which the plaintiffs have not pointed in their complaint.

Finally, the alleged fraudulent statements and omissions on which this claim hinges are statements which the plaintiffs also contend are encompassed by the agreements themselves, that is, that the transaction in which LST purchased the policies "were in accordance with and in compliance with all applicable United States federal, state and local laws, rules and regulations applicable to life settlement transactions and the purchase and resale of life insurance policies." These representations or concealments are not extraneous to the contract, and therefore must be asserted as a breach of contract claim and not as a fraudulent inducement claim. See Bridgestone/Firestone, 98 F.3d at 20.

V. RICO

The first three claims are brought against all defendants under RICO, 18 U.S.C. § 1962. A claim under Section 1962(a) alleges that Ritchie I and II are enterprises, and that the defendants received income or proceeds derived directly or indirectly from a pattern of racketeering activity, and used or invested that income and proceeds in the acquisition of an interest in or the establishment or operation of Ritchie I and II. A claim under Section 1962(c) alleges that two or more of the individual defendants or any one of the corporate defendants is an enterprise, [FN6] and that the defendants are distinct from that enterprise and conducted or participated directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity with one exception. To the extent the enterprise consists of one corporate defendant, then that defendant is not alleged to have violated this provision of the law by conducting its own affairs. Finally, a claim under Section 1962(d) alleges that the defendants conspired to violate Section 1962(c), that is, to conduct the enterprises' affairs through a pattern of racketeering activity. The definition of enterprise is taken from the Section 1962(c) claim except that, to the extent the enterprise consists solely of one corporate defendant, that corporate defendant is not charged with conspiring with others to conduct its own affairs.

> FN6. The complaint asserts that there is an enterprise "consisting of all of the individual Defendants, or any combination thereof, or any of the corporate defendants alone."

*9 The defendants proffer many grounds for dismissing the RICO claims. The complaint does not allege proximate causation since the harm it describes was caused by the disclosure of the policy origination practices to the market and not by the RICO violations. The plaintiffs have not alleged a clear and definite injury. Many of the plaintiffs seek to recover only because they had a beneficial interest in another plaintiff's investment, which is insufficient to confer standing. With respect to the Section 1962(a) claim, the complaint fails to allege an investment of income or proceeds in Ritchie I or II, which are the defined enterprises, or any investment by the individual defendants in the enterprises. The Section 1962(c) claim asserts tens of thousands of potential enterprises. Finally, no conspiracy can be alleged under Section 1962(d) since corporate employees and affiliates cannot conspire with each other.

The Section 1962(a) claim must be dismissed. Section 1962(a) reads in pertinent part:
> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a) (emphasis supplied). The complaint alleges that LST sold the policies to Ritchie I and II. Assuming for the moment that the policies constitute "income" derived from

Slip Copy
(Cite as: 2007 WL 2044656, *9 (S.D.N.Y.))

Page 10

racketeering activity, the issue becomes whether the complaint has adequately alleged that the policies were used or invested to "acquire an interest" in or to "establish or operate" either Ritchie I or II.

The plaintiffs do not contend that the sale of policies to Ritchie I and II constitutes the necessary acquisition of an interest. "Under the plain language of this section, a violation of § 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering." Ouaknine v. MacFarlane, 897 F.2d 75, 82 (2d Cir.1990). "[A] plaintiff must allege injury 'by reason of' defendants' investment of racketeering income in an enterprise." Id. at 82-83.

The plaintiffs point to the following set of allegations in the complaint to support the Section 1962(a) claim. The complaint alleges that Coventry, which it elsewhere defines as the four corporate defendants, "jointly committed capital to, and became owners of subordinated securities in, Ritchie I and Ritchie II, which entitled ... Coventry to receive the profits of Ritchie I and Ritchie II after other debts have been paid." [FN7] This is insufficient to state a Section 1962(a) claim. The complaint alleges that the policies were acquired through the pattern of racketeering activity, and it is the policies or the proceeds from those policies that must be used to acquire an interest in the enterprise. The separate investment of capital to acquire subordinated securities in the enterprise is insufficient. And, of course, the alleged RICO injury is not alleged to have arisen from the investment made to acquire subordinated securities of Ritchie I and II.

> FN7. This allegation would not support a claim against any of the individual defendants, and engages in impermissible group pleading as to the corporate defendants.

*10 As for the remaining two RICO claims, the plaintiffs will be allowed to replead the Sections 1962(c) and (d) claims in order to identify with more specificity the enterprise or enterprises involved in those violations. The defendants estimate that the current formulation has about 40,000 permutations. It is impossible to assess whether the complaint states a claim without having a more definite statement of the claim. As currently formulated, these two claims fail to give the defendants fair notice.

VI. Personal Jurisdiction: Coventry Group, Inc. and Montgomery Capital, Inc.

Although defendants' motion to dismiss has been granted on all counts, leave to replead has been granted on the breach of contract and two of the RICO claims. In addition, plaintiffs have sufficiently pled facts to pierce the corporate veil. Therefore, personal jurisdiction as to the Coventry Group, Inc. and Montgomery Capital, Inc. is considered here.

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Best Van Lines, Inc. v. Walker, 04-3924-cv, slip op. at 5, --- F.3d ----, 2007 WL 1815511 (2d Cir. June 26, 2007) (citation omitted). Where, as here, there has been no discovery, the plaintiff need only make "legally sufficient allegations of jurisdiction" through its pleading and affidavits in order to survive a motion to dismiss. In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir.2003) (per curiam).

Personal jurisdiction has been sufficiently pled over the two corporate defendants based on plaintiffs' claim for veil piercing. "It is true that the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation.... However, when the activities of the parent show a disregard for the separate corporate existence of the subsidiary, New York jurisdiction may be asserted." Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F .2d 117, 120 (2d Cir.1984). Furthermore, the New York long-arm statute provides jurisdiction over acts committed "in person or through an agent," N.Y. C.P.L.R. 302(a).

Personal jurisdiction has not sufficiently been pled in the complaint as to the remaining RICO claims, but plaintiffs may replead on the personal jurisdiction issue under RICO as well. "[A] civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant."

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw

Slip Copy
(Cite as: 2007 WL 2044656, *10 (S.D.N.Y.))

Page 11

PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71 (2d Cir.1998). Then, jurisdiction can be obtained on a "showing that the 'ends of justice' so require." Id.

Conclusion

The motion to dismiss is granted as to all counts. Leave to amend will be granted as to the breach of contract claim on behalf of Ritchie I and II and the Section 1962(b) and (c) RICO claims.

SO ORDERED.

2007 WL 2044656 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

