**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | | |
|---|---|---|
| YELLOW PAGES, INC., | : | |
| Plaintiff, | : | 07 CV 6221 (SCR) |
| v. | : | ECF CASE |
| IDEARC MEDIA CORPORATION, | : | |
| Defendant. | : | |

_____

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT IDEARC MEDIA CORP.'S MOTION TO DISMISS**

Raymond R. Wiss (RW 6892)
Wiss & Bouregy, P.C.
30 North Williams Street
Pearl River, NY 10965
Telephone: (845) 735-1415
Attorneys for Plaintiff,
Yellow Pages, Inc.

**TABLE OF CONTENTS**

STATEMENT OF FACTS............................................... 2

LEGAL ANALYSIS................................................... 5

    I.    DESPITE IMC'S ASSERTIONS, YPI's COMPLAINT SATISFIES THE ELEMENTS NECESSARY FOR A BREACH OF CONTRACT CLAIM..................................... 5

        A. Existence Of A Contract........................... 6

        B. Due Performance By Plaintiff...................... 8

        C. Breach Of Contract By IMC......................... 8

        D. Damages To YPI As A Result Of The Breach.......... 8

    II.   EVEN IF YPI'S COMPLAINT FAILS TO PLEAD THE ELEMENTS OF A BREACH OF CONTRACT CLAIM, YPI SHOULD BE ALLOWED LEAVE TO AMEND ITS COMPLAINT FOR ADDITIONAL SPECIFICITY........................... 10

CONCLUSION...................................................... 13

**TABLE OF AUTHORITIES**

Campo v. 1ST Nationwide Bank,
    857 F. Supp. 264 (E.D.N.Y. 1994)......................... 5,11

Contractual Obligation Productions, LLC., v.
    AMC Networks, INC, 2006 U.S. Dist. LEXIS 16402
    (S.D.N.Y. 2006)......................................... 9

Cortec Industries, Inc. v. Sum Holding L.P, et al.,
    949 F.2d 42 (2nd Cir. 1991) ............................. 11

Don W. Stephens v. National Distillers and
    Chemical Corporation, et al., 811 F. Supp. 937
    (S.D.N.Y. 1993)......................................... 9

Forman v. Davis,
    371 U.S. 178, 182 (1962)............................... 11

R.H. Damon & Co. v. Softkey Software Products, Inc.,
    811 F. Supp. 986 (S.D.N.Y. 1993)........................ 5

Ronzani v. Sanofi S.A., et al.,
    899 F.2d 195, 198 (2nd Cir. 1990) ...................... 11

Stratton Group, Ltd. v. Sprayregen,
    458 F. Supp. 1216, 1218 (S.D.N.Y. 1978)................. 9

Weiss v. La Suisse,
    69 F. Supp. 2d. 449 (S.D.N.Y. 1999).....................

F.R.C.P. 8(A)(2)........................................... 10

F.R.C.P. 12(b)(6).......................................... 5

F.R.C.P. 15(a)............................................. 10

**STATEMENT OF FACTS**

Plaintiff, Yellow Pages, Inc., (hereinafter "YPI") is a Certified Marketing Representative ("CMR") that is engaged in the business of soliciting and selling national yellow pages advertising to various advertisers. (See Plaintiff's Complaint at paragraph 13) Idearc Media Corp. ("IMC") is a publisher of printed yellow pages directories that are distributed to the public without charge. (Id. at paragraph 5) IMC is also a member of the Yellow Pages Publishers Association ("YPPA"), which is the system of National Yellow Pages advertising within the United States, and, therefore, abides by YPPA'S Bylaws and Guidelines. (Id. at paragraph 6, 7 and 14)

There are two classifications of Yellow Pages advertising, "national" and "local". Those advertisers that are deemed "national" are able to place their advertising programs through a CMR, rather than having to negotiate and place their programs separately with each publisher on a local basis. (Id. at paragraph 11). The Bylaws and Guidelines of YPPA provide that "all members agree, upon acceptance into the Association, to adhere to the bylaws, rules and guidelines of the Association." (Id. at paragraph 15) In addition to these guidelines, member publishers may promulgate contracts including specific

additional terms governing the publication of advertising within their directories. (Id. at paragraph 16)

Verizon, which previously published yellow pages directories and was a member-publisher of YPPA, under its published "terms and conditions", as well as under applicable YPPA guidelines, accepted, as national accounts, the advertising programs of those who did not otherwise meet the standard definition of "national account" under YPPA. (Id. at paragraph 18) Accounts that were commonly referred to as "Group Purchasing Organizations" or "GPOs" were those national associations that did not individually qualify for national account treatment but the advertising was accepted on such basis due to its affiliation/enrollment in the national association. (Id. at paragraph 19)  When IMC acquired Verizon's yellow pages publishing operations and became a publisher of those yellow pages directories, theretofore published by Verizon, IMC continued the practices of accepting GPO members as national accounts. (Id. at paragraph 20)

In December 2006, IMC notified all CMRs of its intention to modify its national account qualifications effective as of January 19,2007. (Id. at paragraph 21) One change included the non qualification of advertisers whose basis for qualification was membership in a GPO. (Id. at paragraph 21) Prior to such deadline, YPI submitted yellow pages advertising on behalf of

3

Geisinger Health System ("GHS"), Clearfield Hospital ("CH") and United Church Homes ("UCH"). (Id. at paragraph 23) At the time YPI submitted the proper paperwork for placement of the advertising, and even today, these three aforementioned companies are members of Amerinet, a recognized GPO. (Id. at paragraph 25) IMC refused to accept such advertising, even after specific representations were made by IMC to YPI with respect to the fact that such advertising would be accepted, and, therefore, breached its contract with YPI. (Id. at paragraph 26 and 27)

**LEGAL ANALYSIS**

**I.  DESPITE IMC'S ASSERTIONS, YPI's COMPLAINT SATISFIES THE ELEMENTS NECESSARY FOR A BREACH OF CONTRACT CLAIM.**

"The court may grant a motion to dismiss for failure to state a claim pursuant to F.R.C.P. 12(b)(6) only where it is beyond doubt that the plaintiff cannot prove any set of facts supporting entitlement relief." See Campo v. 1ST Nationwide Bank, 857 F. Supp. 264, 269 (E.D.N.Y. 1994). The court must accept the material facts that are alleged in the complaint as true and construe all reasonable inferences in favor of the Plaintiff. See id.

In this case, the Defendant has argued that the breach of contract claim made within Plaintiff's Complaint, and that which is the sole claim within same, is insufficient to withstand a motion to dismiss because it fails to satisfy the basic elements of a breach.  However, for the reasons set forth herein such motion is without merit.

"The essential elements of a claim for breach of contract under New York law are: (1) the existence of a contract; (2) due performance by plaintiff, (3) breach of contract by defendant, and (4) damage as a result of the breach." See Campo, supra, at 270; See also R.H. Damon & Co. v. Softkey Software Products, Inc., 811 F. Supp. 986, 991 (S.D.N.Y. 1993). Plaintiff's

5

complaint does, in fact, satisfy all such elements. There is the existence of a contract between Plaintiff and Defendant.

A. **Existence Of A Contract**

Paragraphs 7 to 15 of the Complaint allege that both YPI and Defendant IMC are members of the Yellow Pages Publishers Association ("YPPA"). In particular, YPI is a Certified Marketing Representative ("CMR") of YPPA and IMC a Publisher Member of YPPA.

Paragraphs 7 to 15 also allege that YPPA's Bylaws and Guidelines are used by both publishers and CMRs, including YPI and IMC, as the basis and terms upon which such parties enter into contracts for the placement of "national accounts" (as such term is defined by YPPA's Bylaws and Guidelines, see Paragraph 9 of the Complaint) for national yellow pages advertising.

Paragraph 16 of the Complaint alleges that member publishers may also enter into contracts "governing the publication of yellow pages advertising within their directories."

Paragraph 17 of the Complaint alleges that advertising secured by YPI was, pursuant to the agreement with IMC, placed for publication in IMC's Yellow Pages directories, and accepted by IMC for same.

Paragraphs 18 and 19 of the Complaint allege that IMC's predecessor, Verizon, agreed with YPI to accept "as national

6

…

accounts, the advertising programs of advertisers who did not otherwise meet YPPA's definition of 'national accounts,'" and that included within the accounts permitted by YPPA to qualify as "national" were "Group Purchasing Organizations", or "GPOs."

Paragraph 20 of the Complaint alleges that when IMC succeeded Verizon as publisher, IMC continued to agree with YPI to accept GPOs as national accounts.

Paragraphs 21 and 22 of the Complaint allege that in or about December 2006, IMC notified all CMRs that as of January 19, 2007, it was modifying its national account qualifications, <u>inter alia</u>, to exclude membership in a GPO as a basis for qualifying as a national account. However, IMC nevertheless agreed with all CMRs, including YPI that accounts qualified as national accounts prior to January 19, 2007 would continue after such date to be accepted as national accounts.

Paragraphs 23, 24, 25, and 27 allege that prior to January 19, 2007, YPI submitted to IMC advertising programs for Geisinger Health Systems ("GHS"), Clearfield Hospital ("CH"), and United Church Homes ("UCH") for acceptance and publication as a national account. Further, these paragraphs allege that GHS, CH, and UCH were members of Amerinet, and that IMC recognized Amerinet as a GPO.

Moreover, the Complaint alleges (at Paragraph 27) that during the submittal process for national account qualification

for GHS, CH, and UCH, IMC specifically represented to and agreed with the representatives of YPI that the advertising programs of said advertiser would be accepted as national accounts.

Clearly, Plaintiff has alleged the existence of a contract, based on the practices and agreements of both Verizon and IMC. Furthermore, representatives of IMC specifically represented to and agreed with YPI that such advertising programs of GHS, CH and UCH would in fact be accepted as national accounts.

### B. Due Performance By Plaintiff

Paragraph 28 of the Complaint alleges that YPI, in accordance with its agreement with IMC, and pursuant to the specific representations and agreements with IMC that GHS, CH, and UCH would be accepted as national accounts, submitted the required paperwork to IMC prior to January 19, 2007 for such qualification. Plaintiff's Complaint thus alleges due performance by Plaintiff.

### C. Breach Of Contract By IMC

Clearly, the Complaint at Paragraphs 26 and 28 allege that IMC has breached its contractual agreement with YPI, by failing to accept the advertisements of the Amerinet affiliates and refusing to recognize them on a national account basis.

### D. Damages To YPI As A Result Of The Breach

At Paragraphs 19 and 20 of the Complaint, YPI alleges that it sustained and continues to sustain economic loss, damages and

8

injury because of such breach. Furthermore, YPI sustained damage to its good name and reputation in the industry for which it is also entitled compensation.

In summary, the complaint has properly alleged the necessary facts for a breach of contract claim and provides clear and unmistaken notice to the Defendant of such claim.

It should also be noted that courts in this jurisdiction have held that a plaintiff is not required to attach a copy of the contract to the complaint. See Don W. Stephens v. National Distillers and Chemical Corporation, et al., 811 F. Supp. 937, 958 (S.D.N.Y. 1993); See also Stratton Group, Ltd. v. Sprayregen, 458 F. Supp. 1216, 1218 (S.D.N.Y. 1978). Therefore, Plaintiff should not now be required to attach a copy of any contract to its Complaint as proof that a contract existed between Plaintiff and Defendant. It is clear by the way in which the Complaint was framed that a contractual agreement, whether its deemed expressed or implied, did exist between YPI and IMC with respect to recognition and adoption of GHS, CH and UCH as national accounts.

Further "there is no requirement in the Federal Rules of Civil Procedure that the details of a breach of contract claim be pleaded with particularity." Contractual Obligation Productions, LLC., v. AMC Networks, INC, 2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. 2006), citing Weiss v. La Suisse, 69 F. Supp.

2d. 449, 462 (S.D.N.Y. 1999). "The plaintiff need not plead each element individually as long as the complaint contains a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" See id., citing to F.R.C.P. 8(A)(2).

Plaintiff has provided the details necessary to form the foundation for a breach of contract claim. YPI has provided the Defendant and the Court with a "short and plain statement" that shows Plaintiff is entitled to the requested relief. Even if the Court finds that each element is not pleaded individually, Plaintiff did plead according to the Federal Rules by providing a statement that Plaintiff is entitled to relief.

Based on the foregoing, Plaintiff has satisfied the elements for a breach of contract claim. Therefore, Defendant's Motion to Dismiss must be denied.

II. **EVEN IF YPI'S COMPLAINT FAILS TO PLEAD THE ELEMENTS OF A BREACH OF CONTRACT CLAIM, YPI SHOULD BE ALLOWED LEAVE TO AMEND ITS COMPLAINT FOR ADDITIONAL SPECIFICITY.**

Assuming, arguendo, the Court determines that the Complaint fails to sufficiently allege a claim for a breach of contract, Plaintiff should be granted leave to amend its complaint to add more specificity to its claim.

According to F.R.C.P. 15(a), "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served..." If such responsive pleading has been served, then the amending party may only amend by leave

of court or by written consent of the adverse party. The rule further states that "leave shall be freely given when justice so requires."

It is the usual practice of the Courts upon granting a motion to dismiss to allow leave to replead. See Cortec Industries, Inc. v. Sum Holding L.P, et al., 949 F.2d 42 (2nd Cir. 1991); see also Ronzani v. Sanofi S.A., et al., 899 F.2d 195, 198 (2nd Cir. 1990) The granting of leave to amend a pleading is within the discretion of the Court. See Campo v. 1ST Nationwide Bank, et. al, 857 F. Supp. 264, 269 (1994). "Nonetheless, the Court may deny leave if the amendment (a) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." See Contractual Obligation Productions, LLC., v. AMC Networks, INC, 2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. 2006), citing Forman v. Davis, 371 U.S. 178, 182 (1962).

In this case, there is no basis for the Court to deny Plaintiff leave to amend its complaint should the Plaintiff's original complaint be dismissed. Plaintiff's amendment would not be considered unduly delayed nor does Plaintiff seek leave to amend for a dilatory purpose.  Further, it would not be made in bad faith nor could the Defendant be prejudiced insofar as the case is still in the initial stages of the judicial process and

the events giving rise to this action only occurred in 2007. Furthermore, neither side has conducted any discovery to the claim asserted within the complaint.

Allowing Plaintiff leave to amend would not be futile because, if necessary, Plaintiff can and will plead its claim with more specificity. YPI has both a factual and legal basis to bring a breach of contract claim and would be able to further articulate same for Defendant and the Court.

Therefore, as the courts have stated, "even if a motion to dismiss were granted, leave to replead should generally be permitted,..." <u>See</u> <u>id</u>. Plaintiff has provided the Court with the basis for a breach of contract claim. Therefore, Plaintiff should be permitted to amend the Complaint to plead its claim with more particularity if such a dismissal is granted by the Court.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss Plaintiff's Complaint.[1] In the alternative, Plaintiff respectfully requests leave to amend its Complaint should the Court choose to dismiss same.

/s/ Raymond R. Wiss (6892)
Raymond R. Wiss

Date:    August 21, 2007
         Pearl River, NY

---

[1] Defendant argues that Complaint was defective pursuant to F.R.C.P 11 (a) in that same had not been signed by at least one of Plaintiff's attorney. However, Plaintiff did file a fully executed copy of the Complaint, which included the signature of YPI's attorney, with the Court on June 8, 2007. Therefore, there is no deficiency under F.R.C.P 11(a). Plaintiff attaches its fully executed copy to the Declaration of Raymond R. Wiss as Exhibit B.